## CIRCUIT COURT OF FAIRFAX COUNTY

Federal Financial Co.

v.

Applied Resources, Inc., et al.

May 29, 1996

Case No. (Law) 141098

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came for a bench trial on May 20, 1996, on the pleadings previously filed. At the conclusion of all the evidence, the Court took the matter under advisement to review the exhibits and pertinent case law. For the reasons that follow, judgment is entered in favor of the plaintiff against defendants Applied Resources, Inc., and Peter A. Polk. Judgment is also rendered in favor of defendants Donna L. Polk and Ruth M. Kanen. The Court has no jurisdiction over and takes no action as to defendant Andrew C. Kanen.

On January 31, 1989, defendant Applied Resources, Inc. ("the Corporation") executed a credit line note ("the note") with Madison National Bank of Virginia ("the Bank") in the principal amount of $25,000.00. Defendants Peter A. Polk, Donna L. Polk, Andrew C. Kanen, and Ruth M. Kanen were "endorsers" on the note. On February 13, 1989, the Corporation executed a credit line loan agreement with the Bank. In 1991, the Bank failed and was taken over by the Federal Deposit Insurance Corporation. While under the control of the FDIC, the defendants' obligation on the note was serviced by an entity called Oxford. In November, 1994, the plaintiff, Federal Financial Company ("Federal") purchased the note from

the FDIC. Federal brings this action against the defendants[1] on an alleged unpaid principal balance of $9,361.87 plus interest, costs, and attorney's fees. The defendants claim that no sum is owed because the note was fully paid in 1991. Further, Mrs. Polk and Mrs. Kanen assert that the claim is unenforceable against them because of a violation of the Equal Credit Opportunity Act.

In their defense, Mrs. Polk and Mrs. Kanen each claim that they were required to sign the guaranty solely because they were married to Mr. Polk and Mr. Kanen, respectively. They argue that this requirement violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 through 1691f, and therefore, the guarantee was and is void as applied to them. The Supreme Court of Virginia considered this defense under similar facts in *Eure v. Jefferson National Bank*, 248 Va. 245 (1994). In *Eure*, the Supreme Court recognized that under regulations prescribed by the Federal Reserve Board pursuant to § 1691(a)(1) of the Act, "a creditor shall not require the signature of an applicant's spouse . . . other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." *Eure*, 248 Va. at 247 (citing 12 C.F.R. § 202.7(d)(1) (1993). The Supreme Court in *Eure* allowed the wife to use a violation of the Act as a defense to avoid liability under a guaranty agreement.

In the present case, Mrs. Kanen testified that she was never a shareholder, officer, director, or employee of the Corporation; that she never was asked to supply credit information or fill out a credit application for the Bank's loan; that she received no benefits from the loan; and that she only signed the note because she was requested to do so by her husband. Both counsel stipulated that Mrs. Polk would offer the same testimony.

I find that the requirement that Mrs. Polk and Mrs. Kanen endorse the note constituted a violation of the Equal Credit Opportunity Act, and therefore, that neither is liable under the note.

I also find by a preponderance of the evidence that the Corporation did not fully repay the note in 1991. Evidence presented by Federal of an outstanding balance consist of the original Bank note that has not been marked paid and satisfied; a Federal business record showing the transfer of the claim on the obligation from the FDIC to Federal, with an outstand-

---

[1] Mr. Kanen was deceased at the time the motion for judgment was filed. No motion was made to substitute his estate as a defendant in this case. Counsel for the defendants specifically advised that they did not represent Mr. Kanen in this matter.

ing principal balance on the note of $9,361.87,[2] and demand letters by Federal to the defendants in March and April, 1995.

Federal's possession of the original unsatisfied note creates a presumption that the note was not paid. *Schmitt v. Redd*, 151 Va. 333 (1928). Other documents received into evidence support the existence of an outstanding balance. The burden of demonstrating payment therefore shifts to the defendants. Mr. Polk testified that he believed payment was made by the defendants pursuant to the terms of a June 5, 1990, letter from Mr. Kanen to Larry Loughborough, Vice President of the Bank. The letter purports to enclose a check in the amount of $10,000.00 with the principal balance to be paid in $5,000.00 increments on the fifth days of July, August, and September, 1990. The Corporation went out of business in 1991 and, three years later, discarded most of its corporate records. Mr. Polk was able to produce from his personal records copies of certain financial statements of the Corporation dated September 30, 1991. Both the balance sheet and trial balance indicate no liabilities of the Corporation to any lender. Indeed, under a listing of current liabilities in Defendant's Exhibit 4, the entry shows "Madison Bank — $.00."

This case was more notable for the lack of evidence by both Federal and the defendants than for the evidence presented. Federal offered no Bank documents other than the original note and loan agreement. There were no ledgers or account sheets from the Bank showing the dates and amounts of payments and any outstanding balance. There was an absence of any written demand by the Bank or its successors in interest to the note between April, 1990, and March 1995. Clearly, certain payments were made by or on behalf of the defendants between the April, 1990, demand of $25,000.00 in principal and the current alleged balance of $9,361.87. The defendants assert that because the corporate books and records were destroyed, they have no documentary evidence of payment such as cancelled checks, transmittal or acknowledgment letters, etc. But though the defendants may no longer have access to the Corporation's books and records, there was no indication that they went to the Corporation's bank to try to obtain copies of the Corporation's checks paying off the note. Mr. Polk testified that he believed Mr. Kanen paid off the note because the Corpo-

---

[2] Federal also sought to offer an Oxford business record reflecting the same indebtedness. The defendants objected based on hearsay, and I took the matter under advisement. I now rule that the business records exception to the hearsay rule was not fully met and sustain the objection.

ration later sent a letter to the Bank requesting a new line of credit, and this was never done until an old line of credit was paid off. When asked if he had a copy of the letter, Mr. Polk said he did. But the letter was never produced as evidence by the defendants, perhaps because apparently, it was not provided to Federal in response to discovery requests.

I find the defendants' evidence of payment of the note insufficient to rebut the presumption of non-payment. By a preponderance of the evidence, Federal is entitled to judgment against the Corporation and Mr. Polk on the unpaid principal balance on the note of $9,361.87.[3]

No judgment is awarded to the plaintiff against Mr. Kanen because he died prior to this action being filed. That information was conveyed to Federal in a responsive pleading on behalf of the other defendants. Because he predeceased the filing of this action, Mr. Kanen was never served properly, and the Court has no jurisdiction over him. No effort was made to substitute Mr. Kanen's estate as a defendant in this matter.

No pre-judgment interest is awarded to Federal. The note called for interest at a fluctuating annual rate equal to three and a half percentage points higher than the rate of interest publicly announced by the Bank from time to time as its Base Rate. Although Federal presented evidence as to the prime rate during the prejudgment period, no evidence was presented as to the Bank's Base Rate for any period, including the time before the Bank was taken over by the FDIC. As a result, proof of interest pursuant to the terms of the note was not presented and cannot be awarded. Alternatively, Federal seeks an award of interest at the legal rate. An award of pre-judgment interest apart from that mandated by an instrument is in the sound discretion of the trial court. Under the circumstances of this case, the Court declines to exercise its discretion to award interest to Federal.

---

[3] The note provides the following with regard to any liability of the individual defendants: "Each of the undersigned endorsers hereby expressly acknowledges and agrees to all terms, provisions, and stipulations set forth in this Note." Whether this language is sufficient to hold the individual defendants liable under the note is an open question. But no argument was made by the individual defendants that this language was insufficient to hold them personally liable, and no parol evidence was offered to resolve any ambiguities in the endorsement language. The defendants' answer and grounds of defense fails to deny specifically Federal's allegation in paragraph three of its motion for judgment that all defendants are debtors under the note. The Court must assume that the individual defendants believe the endorsement language was intended to obligate them personally on the note, and therefore, no ruling on that issue is necessary.

Federal is awarded 25% attorney's fees and costs, as provided in the note.